UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CRIMINAL ACTION NO. 5:12-CR-00006-TBR

UNITED STATES OF AMERICA                                                Plaintiff

v.

BARRY HICKS                                                             Defendant

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant Barry Hicks' Motion to Suppress evidence obtained as a result of the search of his laptop computer. (Docket No. 21.) The United States has responded. (Docket No. 23.) For the following reasons, Defendant's Motion to Suppress, (Docket No. 21), is hereby GRANTED.

## BACKGROUND

On April 18, 2011, Detective Captain Matt Carter (Detective Carter) of the McCracken County Sheriff's Department applied for and received a search warrant from the McCracken County District Court to search Hicks' laptop computer. Detective Carter proffered that there was probable cause to believe that the computer contained child pornography. Along with his affidavit for the search warrant, Detective Carter attached the statements of Commander Chris Martin, the security shift commander at the U.S.E.C. Paducah Gaseous Diffusion Plant, where Hicks was employed, as well as of security officer Troy Woody. Specifically, Detective Carter's application for search warrant recounted the following facts as the basis for probable cause:

- On February 15, 2011, Troy Woody, a security guard at Hicks' employer, contacted security shift commander Chris Martin, who then alerted the McCracken County Sheriff that a cell phone belonging to Hicks, which had been left at the entry gate pursuant to U.S.E.C. security regulations, contained "suspicious/questionable photos." (Docket Nos. 21, at 2; 23-1, at 1.) Specifically, Commander Martin observed photographs on Hicks' phone depicting "the clothed buttocks, breasts and cleavage of young teenage girls at a birthday party," "a 'computer generated' full frontal nude image of a teenage Miley Cyrus, and some surreptitiously taken photographs of a teenage girl walking to and standing at a bus stop." (Docket No. 23, at 2.) Detective Carter concluded that "[d]espite the suspicion of the photos the incident did not warrant any criminal charges to ensue at this time." (Docket No. 23-1, at 2.)

- On March 22, 2011, Detective Carter responded to a similar call from U.S.E.C. security personnel concerning Hicks' phone. (*Id.*) Learning that Hicks had left his employer's property, Detective Carter located and conducted a traffic stop of Hicks' vehicle. Hicks consented to have his phone searched, and Detective Carter stated that he "locate[d] a couple of photos that were pretty obvious to have been taken by an armature [sic] of a topless female that could have easily been under the age of 18." (*Id.*) When asked where the photos came from, Hicks responded "he believed it was text [sic] to him." (*Id.*) Hicks consented to Detective Carter keeping his phone and agreed to meet Detective Carter at the sheriff's department.

- On the way back to the office, Detective Carter contacted social services to inquire whether Hicks had a history with any "possible daughters and or other children" and was informed that there had been an "altercation" reported between Hicks and his daughter last year.[1] (*Id.*)

---

[1] This "altercation" is not identified or further described in Detective Carter's affidavit.

- Hicks consented to Detective Carter's searching his residence, during which Detective Carter located a laptop computer and several CDs, which Hicks consented to be taken for analysis. Detective Carter also noted a large amount of pornographic material in Hicks' bedroom and bathroom, as well as "some notebook papers" that listed pornographic websites. (*Id.* at 3.)

- On March 24, 2011, Detective Carter interviewed Hicks' daughter, Aleysha Hicks. Aleysha alleged that several years prior, Hicks, who had been drinking, "came up to her and grabbed her breast area and vagina area" while she and a friend were "dancing in the living room." (*Id.*) Aleysha also told Detective Carter that on at least one occasion Hicks had peeked into her room when she had a friend over. Additionally, Aleysha stated that when she was 6 or 7 years old, Hicks would give her a bath and that she "believes these baths were a little odd," because she bathed herself at her mother's house. (*Id.*)

- Also on March 24, 2011, Detective Carter interviewed Hicks' ex-wife, Victoria Hicks. Victoria told Detective Carter that Aleysha had alleged that Hicks touched her and that she, Victoria, had confronted Hicks about it but did not pursue it further after Hicks denied it. Detective Carter states in bold, underlined text, "I also learned from the x-wife that it was reasonable to believe that the computer I took had been exposed to young children pornographic web sites in the past." (*Id.*)

- Detective Carter visited the homepages of the websites listed on the seized notebook papers to determine whether they appeared to contain child pornography; however, his affidavit does not state whether any of the websites did appear to contain child pornography, only that "[s]ome of the sites required you to enter a password to proceed beyond the home page in which this detective did not." (*Id.* at 3-4.)

3

On March 25, 2011, Detective Carter reinterviewed Hicks. After being given his *Miranda* warnings, Hicks requested an attorney, and the interview stopped. On April 11, 2011, Hicks' attorney advised Detective Carter that Hicks no longer consented to any search of his seized computer. (Docket No. 23-1, at 5.) Based on the information outlined above, Detective Carter proceeded to obtain a warrant for the search of Hicks' computer, which was executed on April 21, 2011. (Docket No. 23, at 4.) Hicks now moves the Court to suppress evidence obtained as a result of the search of his laptop computer on the basis that the warrant was issued in violation of the Fourth Amendment in that the facts contained in the affidavit in support of the warrant were insufficient to establish probable cause. (*See* Docket No. 21, at 1.) Hicks further suggests that the warrant was so lacking in indicia of probable cause as to render a reasonably trained law enforcement officer's belief in its existence unreasonable. (*Id.*)

**STANDARD**

The Fourth Amendment to the United States Constitution protects individuals against unreasonable searches and seizures. U.S. Const. amend IV. To protect that interest, the Fourth Amendment requires that a search warrant issue only upon a showing of probable cause. *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

Probable cause for a search warrant exists where, based on the totality of the circumstances, the affidavit in support of the warrant provides the issuing magistrate a "substantial basis . . . to believe 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. McNally*, 327 F. App'x 554, 556 (6th Cir. 2009) (quoting *Gates*, 462 U.S. at 238); *United States v. King*, 227 F.3d 732, 742 (6th Cir. 2000)). "To justify a search, the circumstances must indicate why evidence

4

of illegal activity will be found in a particular place." *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (en banc). That is, there must be a "nexus between the place to be searched and the evidence sought." *Id.* (quoting *United States v. Van Shutters*, 163 F.3d 331, 336-37 (6th Cir. 1998)). Thus, in order for a magistrate to determine probable cause, "the affidavit must contain adequate supporting facts about the underlying circumstances to show that probable cause exists for the issuance of warrant." *United States v. Smith*, 182 F.3d 473, 477 (6th Cir. 1999) (citing *Whitely v. Warden*, 401 U.S. 560 (1971)). Those supporting facts need not necessarily be based on the affiant's direct knowledge or observations, but may be based on hearsay information provided by an informant. *Id.* (citing *Jones v. United States*, 362 U.S. 257, 269-70 (1960)).

In its now seminal decision in *Illinois v. Gates*, the Supreme Court set forth the magistrate's responsibility where probable cause is based on an informant's tip:

> The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

462 U.S. at 238. "Veracity" refers to the credibility of the informant, whereas "basis of knowledge" refers to the particular means by which an informant obtained his information. *Smith*, 182 F.3d at 477 (citing *Gates*, 462 U.S. at 228, 230). The Sixth Circuit construes "basis of knowledge" to mean "[t]here must be sufficient information from the underlying circumstances from which an informant could reasonably conclude illegal activity is afoot." *Id.* (citing *Spinelli v. United States*, 393 U.S. 410, 416 (1969)). "In assessing an informant's 'basis of knowledge,' the degree of detail contained in a tip

5

may be used to infer whether the informant had a reliable basis for making his statements." *Id.* (citing *Spinelli*, 393 U.S. at 416). The Supreme Court made clear in *Gates* that although "veracity" and "basis of knowledge" are highly relevant in assessing an informant's information, courts must look to the totality of the circumstances in determining the effect of an informant's tip on establishing probable cause. *See Gates*, 462 U.S. at 230, 233. This Circuit has further interpreted *Gates*, instructing that a court, in reviewing the sufficiency of the evidence supporting probable cause, is "limited to examining the information contained in the four corners of the affidavit" in light of the totality of the circumstances. *United States v. Dyer*, 580 F.3d 386, 390 (6th Cir. 2009).

To deter future violations of the Fourth Amendment, the usual remedy for searches made with a defective warrant is suppression. *E.g.*, *United States v. Woodbury*, 511 F.3d 93, 99 (1st Cir. 2007). However, suppression is not always warranted, and evidence may be saved from suppression where an officer acts in objective good faith in executing an otherwise defective warrant. *United States. v. Leon*, 468 U.S. 897, 905, 922 (1984). Thus, in situations where "evidence is obtained in objectively reasonable reliable on a subsequently invalidated search warrant," the "marginal or nonexistent benefits [of suppression] cannot justify the substantial costs of exclusion." *Id.* at 922; *accord United States v. Richards*, 659 F.3d 527, 542 (6th Cir. 2011). Still, there are four exclusions to *Leon*'s good-faith exception: (1) "when the magistrate . . . was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard for the truth"; (2) "where the issuing magistrate wholly abandoned his [detached and neutral] judicial role"; (3) where the affidavit is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; and (4)

6

where a warrant is "so facially deficient—i.e., in failing to particularize the place to be searched or the thing to be seized—that the executing officers cannot reasonable presume it to be valid." *Leon*, 468 U.S. at 923.

**DISCUSSION**

Hicks contends that the search of his laptop computer should be suppressed on the basis that the warrant was issued in violation of the Fourth Amendment because the facts contained in the affidavit in support of that warrant were insufficient to establish probable cause. Hicks further contends that *Leon*'s good-faith exception is inapplicable in this case because the affidavit was so lacking indicia of probable cause as to render a reasonably trained law enforcement officer's belief in its existence entirely unreasonable. After reviewing Detective Carter's affidavit, the Court must agree.

**I.   The Information Contained in Detective Carter's Affidavit Was Insufficient To Establish Probable Cause.**

In short, Detective Carter proffered the following information: that Hicks possessed pornography on his phone sufficient to raise a reasonable suspicion that the photos depicted girls under the age of 18; that Hicks possessed legal adult pornography in his home; that Hicks maintained a list of pornographic websites, none of which were confirmed to contain images of child pornography; and that Hicks is alleged to have molested his daughter at some time in the past. The lynchpin of Detective Carter's probable cause (as may be inferred from his bolding and underlining this sentence in his affidavit) rests on information gleaned from Hicks' ex-wife: "I also learned from the x-wife that it was reasonable to believe that the computer I took had been exposed to young children pornographic web sites in the past." (Docket No. 23-1, at 4.)

Viewed through the lens of *Gates*, Hicks' ex-wife's statement raises questions as to both veracity and basis of knowledge. The affidavit contains no statement or explanation why Detective Carter found Ms. Hicks' statement credible or why he believed the information she provided was reliable. *Cf. United States v. Smith*, 182 F.3d 473 (6th Cir. 1999) (finding an affiant's statement clearly indicating why an informant was credible satisfied the court's inquiry into the informant's reliability); *United States v. Tuttle*, 200 F.3d 892, 894 (6th Cir. 2000) (finding that it may be sufficient to establish probable cause if police can independently corroborate information received from an informant whose reliability is not established). The affidavit is also devoid of any statement indicating the basis for Ms. Hicks' knowledge or any information that would corroborate her statement. In short, the affidavit provides no more than an uncorroborated, baseless suggestion by Hicks' ex-wife that "it would be reasonable to believe" Hicks' computer had been exposed to child pornography.

The conclusion not to accord significant weight to Ms. Hicks' tip is consistent with case law in this Circuit. For example, in *United States v. McNally*, the Sixth Circuit found an informant established a basis for her knowledge regarding information provided to police where she "acquired the information firsthand based on her personal relationship with the defendant and provided substantial and credible detail". 327 F. App'x at 557. Specifically, the informant in *McNally* had been romantically involved with the defendant for six months immediately prior; had spent considerable time at his residence; had personally seen a pornography file folder title "child kiddie" on his computer (which was the only folder he had locked); and had observed in his possession "numerous photographs of multiple underage females posing in sexual situations,

8

including fondling each other's breasts and genitals." *Id.* at 555, 557. Further, police independently corroborated much of the information the informant provided. *Id.* at 557. Therefore, despite that the informant's credibility had not been established, the court found that under the totality of the circumstances, the basis for the informant's knowledge together with independent police corroboration was sufficient to establish probable cause. *Id.* at 558. Additionally, under these circumstances, the court found that even if the affidavit lacked probable cause, it was not "so lacking in indicia of probable cause" to defeat the *Leon*'s good-faith exception. *Id.* (referencing *Leon*, 468 U.S. at 897).

Detective Carter's affidavit offers no connection with or to Hicks' laptop computer other than Ms. Hicks' statement. The affidavit offers no information establishing the reliability of Ms. Hick's suggestions or on what knowledge that suggestion was based. In short, Detective Carter's affidavit fails to indicate "why evidence of illegal activity will be found 'in a particular place'"—Hicks' laptop computer—as well as to establish a "nexus between the place to be searched and the evidence sought." *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (en banc) (quoting *United States v. Van Shutters*, 163 F.3d 331, 336-37 (6th Cir. 1998)).

Still, the Court must assess whether probable cause nonetheless existed under the totality of the circumstances as presented within the four corners of Detective Carter's affidavit. Detective Carter's affidavit provides facts illustrative of certain questionable conduct on the part of Hicks, but fails under the totality of the circumstances to provide facts directly supporting the presence of child pornography on Hicks' computer as well as a nexus between Hicks' conduct and the crime of child pornography.

First, the affidavit offers Hicks' daughter's allegation that Hicks "grabbed her breast area and vagina area" on one occasion.[2] This alleged conduct is clearly inappropriate; however, the affidavit fails to provide any specifics as to Hicks' daughter's age either now or at the time of the alleged incident. Regardless, this Circuit has held on several occasions that even "a high incidence of child molestation . . . may not demonstrate that a child molester is likely to possess child pornography" for purposes of establishing probable cause. *United States v. Hodson*, 543 F.3d 286, 293 (6th Cir. 2008) (quoting *United States v. Adkins*, 169 F. App'x 961, 967 (6th Cir. 2006)). Moreover, the Sixth Circuit has explicitly rejected the conclusion that an officer's "belief that probable cause of child molestation supported a search for child pornography was objectively reasonable, based on no more than 'common sense.'" *Id.* (rejecting the Eleventh Circuit's reasoning in *United States v. Haynes*, 160 F. App'x 940, 944 (11th Cir. 2005)). Accordingly, the Court finds that the information contained within the affidavit regarding Hicks' conduct with his daughter, in light of the totality of the circumstances, offers nominal support for probable cause to search Hicks' computer for child pornography.

Additionally, Detective Carter's affidavit supplies no information to suggest that his special training or particular experience in the investigation of child pornography crimes bolsters a finding of probable cause or bridges an inferential gap as to why probable cause exists to search Hicks' computer. In other recently decided cases in this Circuit, the court has found that an affidavit setting forth specific information pertaining to the investigators' professional knowledge, expertise, or training may support finding a

---

[2] Detective Carter's affidavit also relays statements by Hicks' daughter that on several occasions Hicks "peek[ed] into her room" while she had a friend visiting, and that Hicks bathed her when she was 6 or 7 years old. The Court finds these incidents otherwise innocuous and not wholly inconsistent with ordinary parental behavior, even considering the allegation that Hicks groped his daughter "a couple of years ago." (Docket No. 23-1, at 3-4.)

nexus between the defendant's conduct and the crime of child pornography, where such information relieves the issuing magistrate from having to himself supply an inferential link. *See Adkins*, 169 F. App'x at 967 (finding support for probable cause where affidavit contained FBI expert on crimes against children's opinions as to defendant's classification as a "preferential child sex offender," who as such likely maintained a collection of child pornography on his computer"); *United States v. Wright*, 2010 WL 841307 (E.D. Tenn. March 3, 2010) (finding the necessary inferential link supported by the investigating officer's statements in his affidavit describing his 19 years' experience and responsibility for the investigation of computer crimes). In the present case, Detective Carter's affidavit contains no information as to his experience, expertise, or specialized training in child pornography investigations. While this deficiency does not weaken Detective Carter's affidavit, it nonetheless does not strengthen Detective Carter's conclusions by supplying the issuing magistrate with the necessary inferential link to establish a nexus between Hicks' conduct and probable cause to search his computer.

Overall, the affidavit establishes no meaningful connection between Hicks' phone and laptop computer aside from their common ownership. *Cf. United States v. Zorn*, 461 F. App'x 493 (6th Cir. 2012) (finding probable cause to search defendant's computer where defendant's email account had sent and received multiple videos and pictures appearing to be child pornography); *United States v. Terry*, 522 F.3d 645 (6th Cir. 2008) (finding a sufficient nexus between known child pornography received in defendant's email account and defendant's computer to establish probable cause to search). In fact, when asked how he received the photographs found on his phone, Hicks stated he believed they were texted to him. (*See* Docket No. 23-1, at 2.) "Texted" implies a

11

phone-to-phone transfer and establishes no greater connection to Hicks' computer than to any other electronic device Hicks may have owned. Accordingly, in view of the totality of the circumstances and the information presented in Detective Carter's affidavit, the Court finds that the warrant to search Hicks' computer lacked probable cause and should be suppressed.

## II. *Leon*'s Good-Faith Exception Does Not Save the Evidence from Suppression.

Hicks argues that *Leon*'s objective good-faith exception is inapplicable to the search of his computer because the affidavit was so lacking in indicia of probable cause as to render a reasonably trained law enforcement officer's belief in its existence objectively unreasonable. The Court agrees.

Under the third exclusion to *Leon*'s good-faith exception, the Court does not inquire into the subjective state of mind of the officer conducting the search; rather, "our good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *Leon*, 468 U.S. at 922 n. 23. The Court finds that a reasonably well-trained officer in the field, upon looking at this warrant, would have realized that the search of Hicks' computer for evidence of the crime of child pornography was not supported by probable cause. In other words, it was unreasonable and thus contrary to the protections of the Fourth Amendment for Detective Carter to believe that probable cause existed to search Hicks' computer for child pornography based on the facts contained in the affidavit. The Court further notes that the officer who seized the evidence was also the investigating officer who prepared the affidavit and obtained the warrant. Presumably, Detective Carter had subjective suspicions based on

the facts of this case; however, those subjective suspicions are not sufficient to satisfy a finding of objective good faith in this instance. Accordingly, the Court finds that *Leon*'s good-faith exception does not apply because the affidavit was so lacking in indicia of probable cause as to render a reasonable trained law enforcement officer's belief in its existence objectively unreasonable. Consequently, the Court finds that in order to deter future violations of the Fourth Amendment, all evidence of child pornography obtained from the search of Hicks' computer must be excluded.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Suppress, (Docket No. 21), is hereby GRANTED. All evidence of child pornography obtained from the forensic examination of Defendant's laptop computer is hereby excluded from trial.